VT SUPERIOR COURT
WASHINGTON UNIT

STATE OF VERMONT                                          35235

SUPERIOR COURT                                    CIVIL DIVISION
Washington Unit                                   Docket No. __-__-__ Wncv
                    2019 APR 25  A 9: 39

                                                  222-4-19 Wncv

Debra Kew,                          )
                   Plaintiff,       )
                                    )
    v.                              )                **RECEIVED**
                                    )
                                    )              U.S. DISTRICT COURT
Town of Northfield, VT,             )
Officer Brian Hoar, and             )                 MAY 2 8 2019
Officer Michael Gero,               )              5:19-cv-78
                   Defendants.      )                 RUTLAND, VT

## COMPLAINT

Plaintiff alleges that the Town of Northfield and two of its police officers'

actions injured her and violated her constitutional rights.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 4 V.S.A. § 31.

2.      Venue is proper in Washington County because Plaintiff resides there.  12

V.S.A. § 402(a).

## PARTIES

3.      Plaintiff Debra Kew resides in Northfield, Vermont.  Ms. Kew grew up in

Northfield and, except for time spent in military service, has lived there all of her life.

4.      Defendant the Town of Northfield is a municipal entity charged, in part,

with administration and operation of the Northfield Police Department. The Northfield

Police Department is located at 110 Wall Street, Northfield, Vermont.

5.      Brian Hoar is an officer on the Northfield Police Department.

6.      Michael Gero is an officer on the Northfield Police Department.

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

7.     At all times relevant to this matter, the Town and Officers Hoar and Gero were persons acting under color of state law for purposes of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

8.     Ms. Kew is a Veteran. She enlisted in the Navy on June 23, 1982. Ms. Kew was injured while stationed in Hawaii. Problems with treating her injury resulted in Ms. Kew developing and being diagnosed with PTSD and depression. She suffered military sexual trauma in 1983. She was medically discharged from the Navy in 1984.

9.     Ms. Kew was determined to be permanently disabled in 1993. Ms. Kew currently suffers from PTSD, chronic depression, borderline personality disorder, and anxiety. She is unable to interact with males except in a very brief and casual manner.

10.     Ms. Kew required a wheelchair from 2012 through autumn of 2017 because of surgery on her leg from a prior injury.

11.     Ms. Kew receives treatment and counseling at the Veteran's Administration Hospital in White River Junction.

## History of Welfare Checks by Northfield Police on Ms. Kew

12.     Ms. Kew is not violent. Ms. Kew will occasionally threaten to harm herself. VA procedure is to ask local police to conduct a welfare check when such threats are made.

13.     The Northfield Police has conducted approximately twenty welfare checks on Ms. Kew from the year 2000 to August of 2017.

14.     The vast majority of these welfare checks involved a report of a threat from Ms. Kew that she might overdose on her medications.

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

15.     Only one such incident, as reported by Northfield Police in 2006, involved Ms. Kew using any sort of sharp instrument.  Ms. Kew used a razor blade to cut her arm superficially in addition to taking pills that made her "lethargic and drowsy."  The Northfield Police considered these to be "not life threatening injuries."

16.     The most recent welfare check prior to August of 2017 was on or about June 19, 2017.  On that day, Ms. Kew had spoken to her VA social worker Patricia Laucks and said that she would not see Ms. Laucks tomorrow.  Ms. Laucks construed Ms. Kew's statement as attention-seeking rather than suicidal, but out of caution Ms. Laucks called the Northfield Police to perform a welfare check on Ms. Kew, as Ms. Laucks and the VA typically do in such situations.

17.     According to the Northfield Police report on this welfare check, upon receiving the call from Ms. Laucks, the responding officers looked at the dispatch records for Ms. Kew on the Northfield Police computer system and noted "it seems this is a regular thing [Ms. Kew] says to people and has never acted."

18.     The responding officers then went to Ms. Kew's apartment, knocked on her door and heard a dog barking, but Ms. Kew did not come to the door.

19.     The responding officers "called [Ms.] Laucks back and she too advised this was a regular occurrence with [Ms. Kew] and [Ms. Laucks] did not believe there were any issues."

20.     The responding officers also spoke with a friend of Ms. Kew who advised Ms. Kew had taken a sleeping pill and suggested that was why Ms. Kew was not answering her door.

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

3

21.    The responding officers took no further action and concluded "[a]t this time there is no reason to believe that [Ms. Kew] is not safe based on statements from [her friend], her past history, and [Ms.] Laucks."

22.    The responding officers did not kick down Ms. Kew's door when she did not answer their knocking during this June 19, 2017 welfare check, and in fact, Northfield Police through that time had never kicked down Ms. Kew's door as part of a welfare check.

23.    The Northfield Police and Officer Hoar know Ms. Kew and know of Ms. Kew's medical and psychological impairments.  Officer Gero also knew or should have known of Ms. Kew's medical and psychological impairments.

24.    The Northfield Police and Officer Hoar knew that Ms. Kew required a wheelchair in August of 2017, and had limited mobility.

25.    Ms. Kew has never responded to a welfare check with any violence.  Ms. Kew is known to not be violent.

### Northfield Police Policies

26.    Northfield Police Department's "Response to Resistance" policy states in part:

> "It is the policy of this department that officers will use only reasonable force to bring an incident or event under control.  Reasonable force is only that force which is necessary to accomplish lawful objectives.  All responses to resistance must be objectively reasonable."

27.    Northfield Police Department has a separate policy for dealing with "Persons with Disabilities," which covers persons with a recognized disability under the Americans with Disabilities Act and persons with "other disabilities," defined as

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

4

"injury, illness, mental or emotional state that would render a person more vulnerable to police actions such as use of force incarceration or restraint."

28.     Under this policy, the Northfield Police Department "shall take steps to protect persons with disabilities from inequitable treatment based on their disability and to avoid furthering any injury or disability based on the police contact where such accommodation can occur without jeopardizing the safety of all persons involved in the event."

29.     This policy provides further that in dealing with persons who have ADA or "other" disabilities, officers should consider whether a "particular control or restraint tactic is more dangerous or unreasonable because of the person's disability." The same policy also provides:

> "In any case where an officer becomes aware of an injury, illness or disability which may render the activity, tactic or restraint to be undertaken more dangerous to the individual, the officer shall notify a supervisor and in conjunction with supervisory support take reasonable steps to accommodate the injury or disability."

30.     Northfield Police Department has a separate policy entitled "Dealing with Persons of Diminished Capacity," which covers those with mental health issues or medical complications. Under this policy officers should "respect the comfort zone of the subject in order to reduce any unnecessary agitation" and "not compress [this comfort zone] unless absolutely necessary." Officers should also "move slowly" and "utilize all available tactics to de-escalate the situation where possible."

### The Incident that Caused Ms. Kew's Injuries

31.     On August 22, 2017, Ms. Kew left the Veterans Affair Hospital in White River Junction, VT. She was upset and called the VA crisis line. Before being

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

5

disconnected, she told the VA crisis responder that she was not going to come back to the VA and that she was sick and tired of the VA changing her medications.

32.     VA crisis responders perceived this as a possible threat to harm herself by overdosing on her medications.

33.     Ms. Kew had threatened on multiple prior occasions to VA hospital workers or crisis responders that she would overdose on her medications, including most recently on or about June 19, 2017.  On each occasion, the VA had called the Northfield Police to conduct a welfare check on Ms. Kew, notifying Northfield Police of the specific nature and circumstances of the threat.

34.     The VA asked the Northfield Police to conduct a welfare check on Ms. Kew after her August 22, 2017 call to the crisis line, informing Northfield Police of Ms. Kew's threat to take her pills and not come back to the VA.

35.     On August 22, 2017 at approximately 5:40 PM, Northfield Police Officers Brian Hoar and Michael Gero arrived at Ms. Kew's residence to conduct a welfare check.

36.     Ms. Kew was asleep when Officers Hoar and Gero arrived.  Ms. Kew was unaware of the officers outside of home. She did not hear them knocking at her door. She did not hear any announcements.

37.     Ms. Kew awoke to the officers kicking in her front door and her dog barking.

38.     Ms. Kew walked to just outside her bedroom door where she saw Officers Hoar and Gero.  Ms. Kew yelled at the officers that they had just broken her door and to get out of her home.

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

6

39.     Ms. Kew still required a wheelchair at this time.  However, she was able to stand and walk short distances within her apartment with assistance or by holding onto walls and doorways for support.

40.     Ms. Kew was wearing only a tee shirt and close-fitting athletic shorts and held nothing in her hands.  She insisted that the officers close her door to provide privacy.  There were several individuals gathered around Ms. Kew's front door.

41.     Officer Hoar grabbed Ms. Kew by the wrist, twisted her arm, pushed her to the floor.  Officer Gero grabbed Ms. Kew's other arm and put his knee on her back while Ms. Kew was on the floor.  Officer Hoar handcuffed her behind her back.

42.     The officers put her dog, Sparky, into Ms. Kew's bedroom.  Ms. Kew was then forcefully led to her living room.  Ms. Kew was upset, startled, and scared.  She screamed and pleaded for the officers to take their hands off of her and remove the handcuffs, and that they were breaking her arm.

43.     Ms. Kew sat handcuffed and slumped forward on the floor of her living room for approximately forty-five minutes.

44.     During this time, she asked several times for the handcuffs to be removed, and the officers refused.

45.     At one point, Ms. Kew stated that she wanted to check on her dog and began trying to scoot toward her bedroom door, some 10 to 12 feet away.  Officer Gero responded by dragging Ms. Kew backward across the floor by her handcuffs.

46.     The Northfield Police called Washington County Mental Health Services who sent a social worker to Ms. Kew's apartment.  The social worker told the officers

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

7

to remove the handcuffs.  The social worker determined that there was no longer a need for the police.  The social worker and Officers Hoar and Gero then left.

47.     The handcuffs and the officers' actions injured Ms. Kew's arm.

48.     Officers Hoar and Gero knew their restraint of and use of force on Ms. Kew would be offensive or harmful to her.  Their actions were unnecessary, unreasonable, and excessive under the circumstances.

49.     Ms. Kew called her son shortly after the officers left.  They immediately took her to the Central Vermont Medical Center.  The next day, Ms. Kew's hand was swollen and she went back to the emergency room.  She was immediately taken into surgery and required hospitalization for six days.  Ms. Kew then required extensive rehabilitation.

50.     Ms. Kew's arm is permanently disfigured. She does not have full use of her arm.  She is unlikely to regain full use of her arm.

51.     Her restricted use of her arm limits her ability to work. She works part time at Four Season Care Home and is limited to 2-person work because of her arm.

## LEGAL CLAIMS

### COUNT I

#### Battery

52.     Ms. Kew hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

53.     Officers Hoar and Gero intentionally used force on Ms. Kew.

54.     This use of force was unreasonable and unnecessary under the circumstances, considering the officers' knowledge of Ms. Kew's lack of violent

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

8

history, her age, her physical and psychological impairments, and that she was already confined to her own apartment with no one else present.

55.     Officers Hoar and Gero did not move slowly or respect the comfort zone of Ms. Kew as per Northfield Police policy regarding persons who have mental or medical impairments.   Instead, they engaged with force and physical restraint almost immediately after kicking in Ms. Kew's door, escalating an already terrifying situation for Ms. Kew.

56.     This use of force caused Ms. Kew to suffer permanent injury and disfigurement and mental anguish.

57.     As a result, she is entitled to compensatory and punitive damages in an amount to be determined at trial.

## COUNT II

### Assault

58.     Ms. Kew hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

59.     The actions of Officers Hoar and Gero prior to and during their use of physical force against Ms. Kew put her in fear of imminent danger of bodily harm.

60.     These actions caused Ms. Kew to suffer mental anguish.

61.     As a result, she is entitled to compensatory and punitive damages in an amount to be determined at trial.

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

## COUNT III

### False Imprisonment and Deprivation of Liberty in Violation of the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and Article 11 of the Vermont Constitution

62.     Ms. Kew hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

63.     Officers Hoar and Gero arrested and confined Plaintiff against her will.

64.     Ms. Kew asked Officers Hoar and Gero multiple times to be freed from her handcuffs and for them to take their hands off of her, but Officers Hoar and Gero refused.

65.     Officers Hoar and Gero did not have any reasonable basis or privilege to support their arrest and continued detainment of Ms. Kew.

66.     These actions caused Ms. Kew to suffer permanent injury and disfigurement and mental anguish.

67.     The Town of Northfield is vicariously liable for the acts or omissions of Defendants Gero and Hoar that violated Article 11 of the Vermont Constitution and caused injury to Plaintiff.  See Zullo v. Vermont, 2019 VT 1, ¶¶ 30-31, __ A.3d __.

68.     As a result, she is entitled to compensatory and punitive damages in an amount to be determined at trial.

## COUNT IV

### Negligent Infliction of Emotional Distress

69.     Ms. Kew hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

70.     Ms. Kew was aware that she faced imminent physical peril based on the aggressive actions of Officers Hoar and Gero toward her.

71.     Ms. Kew suffered harmful physical impact from the officers' use of force against her.

72.     Because Officers Hoar and Gero knew Ms. Kew and her nonviolent nature, and also knew her physical and mental impairments, they were at least negligent in their use of force and should have known that Ms. Kew would suffer mental anguish from such force and restraint.

73.     Ms. Kew suffered mental anguish from the incident with Officers Hoar and Gero, and she is entitled to recover damages for this emotional distress in an amount to be proven at trial.

## COUNT V

### Negligence

74.     Ms. Kew falls under the definitions of "Persons with Disabilities" and "Persons of Diminished Capacity" as defined in Northfield Police policies.

75.     Officers Hoar and Gero knew or should have known that Ms. Kew was covered by these Northfield Police policies at the time of the August 22, 2017 welfare check.

76.     These policies set forth mandatory acts to protect persons such as Ms. Kew with mental and physical impairments, including

    a.  an affirmative duty "to avoid furthering any injury or disability based on the police contact";

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

b.  that "officers must constantly analyze what affect, if any, their efforts are having on the subject," which "is essential to identify areas that appear to agitate the subject that should then be avoided"; and

c.  that "[i]n any case where an officer becomes aware of an injury, illness or disability which may render the activity, tactic or restraint to be undertaken more dangerous to the individual, the officer shall notify a supervisor and in conjunction with supervisory support take reasonable steps to accommodate the injury or disability."

77.  Officers Hoar and Gero owed a duty of care to Ms. Kew based on Northfield Police policy and their knowledge and the Northfield Police Department's knowledge of Ms. Kew's history and mental and physical impairments.

78.  Based on Northfield Police policy and Vermont and federal law, Ms. Kew had a clearly established right to reasonable accommodations for her mental and physical impairments and to be free from excessive force by police officers.

79.  Officers Hoar and Gero failed to adhere to Northfield Police policy by using unreasonable and unnecessary force and breached their duty of care to Ms. Kew during their welfare check on August 22, 2017.

80.  Officers Hoar and Gero acted outside their authority and outside reasonable discretion in their actions in dealing with Ms. Kew.

81.  As a result, Ms. Kew suffered physical injury and mental anguish, for which she is entitled to damages in an amount to be proven at trial.

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

12

## COUNT VI

### 42 U.S.C. § 1983 – Excessive Force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article 11 of the Vermont Constitution

82.    Ms. Kew hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

83.    Ms. Kew has a clearly established constitutional right under the Fourth and Fourteenth Amendment to the United States Constitution and Article 11 of the Vermont Constitution to be free from excessive force by law enforcement.

84.    Officers Hoar and Gero either knew or should have known their actions would violate Plaintiff's clearly established right to be free from excessive force.

85.    The acts of Officers Hoar and Gero as described herein intentionally deprived Plaintiff of her constitutional rights and caused her other damages.

86.    The Town of Northfield is vicariously liable for the acts or omissions of Defendants Gero and Hoar that violated Article 11 of the Vermont Constitution and caused injury to Plaintiff.  See Zullo v. Vermont, 2019 VT 1, ¶¶ 30-31, __ A.3d __.

87.    As a result, she is entitled to compensatory and punitive damages in an amount to be determined at trial.

### REQUESTS FOR RELIEF

Ms. Kew respectfully requests that this Court:

1.    Declare that Defendants violated her rights under the Vermont and Federal Constitutions and Vermont common law;

2.    Award her damages for violations of her rights;

3.    Award damages for expenses and medical bills;

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440

4.  Award damages for pain and suffering;

5.  Award punitive damages;

6.  Order the defendants to pay reasonable attorneys' fees and costs as provided

by 42 U.S.C. § 1988; and

7.  Award any other appropriate relief.

## DEMAND FOR JURY TRIAL

Debra Kew demands a jury trial for all issues so triable.

April 22, 2019                              Respectfully submitted,

_____

Ronald A. Shems, Esq.
Stephen F. Coteus, Esq.
Tarrant, Gillies & Richardson
P.O. Box 1440
44 East State Street
Montpelier, Vt. 05601-1440
(802) 223-1112

TARRANT, GILLIES
& RICHARDSON
44 EAST STATE STREET
P.O. BOX 1440
MONTPELIER, VERMONT
05601-1440